UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WILLIAM N. SCHENCK,

Petitioner,

v.

JIM KOSTREBA, DIANE DREWRY, CONRAD I. FREEBURG, MICHAEL HATCH, ERNIE KLIMEK, ROBERT STANICH, KATHLEEN M. TRACY, PAUL TSCHIDA, JESSE VENTURA, MICHAEL WOCHNICK, and John and Jane Does 1-10,

Respondents.

Civil File No. 01-1035 (DWF/AJB)

**REPORT AND RECOMMENDATION**

The above-entitled matter is before the undersigned Magistrate Judge of the District Court on Petitioner's application for a writ of habeas corpus, brought under 28 U.S.C. § 2254. Respondents have filed a timely response seeking to have this action dismissed, contending, inter alia, that the petition is moot.

The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court finds Respondents' mootness argument to be valid and dispositive. It will therefore be recommended that the petition for writ of habeas corpus be denied as moot, and that this action be dismissed.

## I. BACKGROUND

On May 5, 2000, the prosecuting attorney for Cowlitz County, Washington, charged Petitioner with "solicitation to commit murder in the first degree" in violation of state statutes RCW 9A.28.030 and RCW 9A.32.030(1)(a). The charge was based on evidence showing

AUG 10 2001
FILED
JUDGMENT
DEPUTY CLERK

that Petitioner, who was then living in Little Falls, Minnesota, had recently called a Cowlitz County acquaintance named Jerry Nelson, and had asked Nelson to kill a woman named Diana Hawley. Petitioner offered to pay Nelson $1000 to kill Hawley, because he was "tired of her 'bullshit.'" Nelson believed Petitioner was serious about his proposition, and contacted the police. When Petitioner called Nelson back a few days later, a police officer was with Nelson and was allowed to overhear the conversation. The police officer heard Petitioner confirm the arrangements for Hawley's murder. The next day, Petitioner was charged with solicitation to commit murder. (The Washington charging documents are in Petitioner's Exhibits, [Docket No. 3], Appendix 6.)

At the request of the prosecuting attorney, a Cowlitz County superior court judge found there was probable cause to arrest Petitioner and issued a warrant for his arrest on Friday, May 5, 2000. Later that same day, Petitioner was arrested at his place of employment in Little Falls, which is in Morrison County, Minnesota. The following Tuesday, May 9, 2000, Petitioner appeared before a Morrison County district court judge. Petitioner's bail was set at $1,000,000, and a public defender was appointed to represent him. (Respondents' Exhibits, [Docket No. 10], Exhibit 8.)

Petitioner's next court appearance was on May 22, 2000, at which time the Morrison County court scheduled an extradition hearing for June 19, 2000. (Id., Exh. 9.) At that next hearing, the assistant county attorney suggested that the matter should be continued, because the State of Washington had not completed all of the papers needed to process Petitioner's extradition. Petitioner's attorney argued that Petitioner should be released from custody, because the Washington charging documents erroneously indicated that he had been in Washington at the time of his alleged crime. The Morrison County judge

concluded that Petitioner should present all of his defenses in a petition for a state writ of habeas corpus. (Id., Exh. 10.)

Another brief hearing was held on July 10, 2000, and the matter was again continued, this time until July 27, 2000. (Id., Exh. 11.) On that date, the matter came before the Morrison County district court for a hearing that was described by Petitioner's counsel as an "extradition hearing... pursuant to my petition for writ of habeas corpus." (Id., Exh. 12, p. 3.) By that time, law enforcement officials had issued new documentation, which purportedly corrected the error that appeared in the original extradition papers. The corrected documents indicated that Petitioner had actually been in Minnesota when he committed his crime. Based on the amended documentation received from Washington, the Minnesota Governor's office had issued a "substitute rendition warrant" to effect Petitioner's extradition. (Id., Exh. 12, pp. 4-5.)

At the July 27th hearing, Petitioner argued that he should be released from custody by writ of habeas corpus, because (a) his initial arrest was illegal, and (b) the State of Minnesota was attempting to extradite him based on a warrant that was – at least as originally issued – factually inaccurate, because it represented that Petitioner had committed an offense while in Washington and had then fled the state. The next day, the Morrison County judge entered a one-page order denying Petitioner's habeas corpus petition, and directing that Petitioner be delivered to Washington law enforcement officials to be conveyed to the State of Washington. (Petitioner's Exhibits, [Docket No. 3], Appendix 1.) A few days later, Petitioner filed an appeal with the Minnesota Court of

Appeals.[1]

On March 20, 2001, the state Court of Appeals issued a decision upholding the trial court's conclusion that Petitioner should be "surrendered to the Washington authorities." State v. Schenk, No. C5-00-1360 (Minn.App. March 20, 2001), 2001 WL 273092 at * 2 (unpublished opinion). (A copy of the Court of Appeals' decision is in Petitioner's Exhibits, Appendix 2.) By order dated May 29, 2001, the Minnesota Supreme Court denied Petitioner's request for further review of the Court of Appeals' decision. (Id., Appendix 3.)

On Thursday, June 7, 2001, Petitioner filed his present petition seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. This petition, (consisting of the prescribed habeas corpus petition form, [Docket No. 1], and a self-styled supplemental petition, [Docket No. 2]), lists ten named Respondents,[2] and sixteen grounds for relief.[3]

---

[1] At some point while his state court appeals were pending, Petitioner was transferred from Morrison County to a jail in Stearns County, Minnesota. He was still detained there when he filed his current federal habeas petition.

[2] The named Respondents are as follows:

(1) Jim Kostreba, Sheriff of Stearns County
(2) Diane Drewery, General Counsel to the Governor of Minnesota
(3) Conrad I. Freeburg, Morrison County Attorney
(4) Michael Hatch, Minnesota Attorney General
(5) Ernie Klimek, Morrison County Chief Deputy Sheriff
(6) Robert Stanich, Assistant Attorney General
(7) Kathleen M. Tracy, Assistant County Attorney for Morrison County
(8) Paul Tschida, Morrison County Sheriff
(9) Jesse Ventura, Governor of Minnesota
(10) Michael Wochnick, Morrison County Deputy Sheriff

[3] The sixteen grounds for relief, as labeled by Petitioner, are as follows:

(1) "Extradition – Federal Law – Denial of Due Process – Unlawful Arrest and Detention;"
(2) "Due Process – Extradition – Legality of Arrest, Imprisonment and Warrant;"

On Monday, June 11, 2001, unbeknownst to this Court, Petitioner was turned over to Washington law enforcement authorities and transported (by plane) to the State of Washington. On Wednesday, June 13, 2001, the Court entered an Order to Show Cause, (Docket No. 6), directing Respondents to file a written return to Petitioner's habeas corpus petition within twenty days. On Monday, June 18, 2001, the Court received a letter from Petitioner's court-appointed counsel in Washington, indicating that Petitioner was presently located at the Cowlitz County Jail, in Kelso, Washington. (Docket No. 7.)

Respondents filed their return on July 3, 2001. (Docket Nos. 8, 9 and 10.) The return confirms that Petitioner was indeed removed from the State of Minnesota on June 11, 2001 – four days after his petition was filed, and two days before the Order to Show Cause was entered. Although Respondents contend that Petitioner's habeas petition has been rendered moot by his transfer out of Minnesota, Petitioner apparently continues to believe that he should be granted relief in this matter. On July 23, 2001, he filed a "Motion And Declaration Requesting Intervention By The Court," (Docket No. 11), reasserting the

---

(3) "Extradition – A Federal Law – Non-Compliance by State;"
(4) "Due Process – With All Practical Speed;"
(5) "Extradition – Due Process – Loss of Liberty;"
(6) "Extradition – Federal Law – Original Governor's Warrant;"
(7) "Constitutional Law – Full Faith and Credit;"
(8) "Extradition – Legality of Demand by Demanding State;"
(9) "Federal Law – Excessive Bail – Abuse of Discretion – Due Process;"
(10) "Extradition – Federal Law – Warrant;"
(11) "Federal Law – Jurisdiction;"
(12) "Extradition – Due Process – Abuse of Discretion;"
(13) "Federal Law – State Law – Denial of Bail;"
(14) "Federal Law – Legal Representation;"
(15) "Federal Law – Ineffective Assistance of Counsel on Appeal;"
(16) "Extradition – A Federal Law – Warrantless Arrest."

claims and requests for relief set forth in his original petition, and asking to be "furloughed by this Court to return to this Court's jurisdiction." For the reasons discussed below, the Court finds that Petitioner can no longer obtain habeas corpus relief in this District, and that his petition should therefore be dismissed as moot.

## II. DISCUSSION

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-95 (1973).

> "'The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors, and set the prisoner free, but the court relieves him by compelling the oppressor to release his constraint. The whole force of the writ is spent upon the respondent."

Id. at 495, quoting In the Matter of Jackson, 15 Mich. 417, 439-440 (1867), (quoted with approval in Ex parte Endo, 323 U.S. 283, 306 (1944)).

Applying the principle discussed in Braden here, the Court finds that no habeas corpus relief can be granted in this District, because Petitioner presently has no custodian in this District. Even if Petitioner's habeas claims could properly be entertained, (notwithstanding Respondents' contention that the petition includes unexhausted claims), and even if Petitioner's habeas claims were found to have merit, (notwithstanding Respondents' persuasive arguments to the contrary), no writ of habeas corpus could properly be entered against any of the named Respondents, because none of them has any custodial authority over Petitioner at this time.

Every one of the ten Respondents named in the petition is an official of the State

of Minnesota or one of the State's political subdivisions, (i.e., Morrison County or Stearns County). Following Petitioner's removal from the State of Minnesota, not one of the ten named Respondents has any custodial interest in Petitioner, or any custodial authority over Petitioner. Indeed, there is no indication that anyone in the State of Minnesota has any custodial relationship to Petitioner at this time. Because Petitioner presently has no Minnesota custodian, the Minnesota District Court cannot grant any relief to Petitioner by writ of habeas corpus.

Although Petitioner has not asked that a writ of habeas corpus be entered against any government official(s) in the State of Washington, he would not be in a better position in the present action if he had done so. (Nor would he be any better off if he were allowed to amend his petition to include some Washington official(s) as respondent(s).) The Minnesota District Court could not enter a writ of habeas corpus directed to a Washington respondent, even if one were named in the petition, because 28 U.S.C. § 2241(a) authorizes federal district courts to grant writs of habeas corpus only "within their respective jurisdictions." In other words, "the court issuing the writ [must] have jurisdiction over the custodian." Braden, 410 U.S. at 495. See also United States v. Knight, 638 F.2d 46, 47 (8th Cir. 1981) (per curiam) ("[t]o issue a writ of habeas corpus, a district court must have jurisdiction over the petitioner's custodian"). Where a habeas petitioner's custodian is not located within the district court's territorial jurisdiction, the court lacks personal jurisdiction over the custodian, and cannot issue a writ directed to him or her. Hogan v State of Iowa, 952 F.2d 224, 225 (8th Cir. 1991) (per curiam) ("since neither petitioner nor his Nevada custodian was within the State of Iowa, a federal court sitting in Iowa lacked in personam jurisdiction to entertain Hogan's habeas petition or to grant him habeas relief").

Because Petitioner has been transferred to Washington, there is no one in Minnesota, (none of the named Respondents or anyone else), who can presently be considered to be Petitioner's custodian for habeas corpus purposes. Thus, there is no one in Minnesota to whom this District Court can properly direct a writ of habeas corpus. At the same time, this District Court cannot direct a writ of habeas corpus to anyone in Washington who might now be Petitioner's custodian, because no Washington custodian is subject to personal jurisdiction in this District. In sum, Petitioner's habeas corpus petition is moot, because the Minnesota District Court cannot grant a writ of habeas corpus directed to anyone who currently has any custodial authority over Petitioner. See Brown v. Nutsch, 619 F.2d 758, 763 (8th Cir. 1980) ("[o]nce the prisoner has been returned to the demanding state, the writ of habeas corpus is no longer available to challenge his confinement upon grounds arising from conduct in the asylum state"), citing Mahon v. Justice, 127 U.S. 700, 706-08 (1888);[4] see also Lindstrom v. Graber, 203 F.3d 470, 474 (7th Cir. 2000) (noting that habeas petitioner's appeal became moot when he was extradited to Norway while his appeal was pending, because his Norwegian custodians were not subject to the Circuit Court's jurisdiction).[5]

---

[4] In Mahon, a Kentucky prisoner sought to be released from custody, based on facts showing that he had been illegally abducted from the State of West Virginia, and forcibly returned to Kentucky to face criminal charges there. The Supreme Court held that the prisoner was not entitled to habeas corpus relief, even if he could prove that his extradition to Kentucky had been accomplished by illegal means. The Court reaffirmed that principle in Pettibone v. Nichols, 203 U.S. 192 (1906).

[5] In Lindstrom, a federal court of appeals judge granted an emergency stay of extradition before the prisoner left the country, but federal authorities still allowed the extradition to be completed. The Court of Appeals quickly concluded that the extradition itself was a fait accompli, and that the prisoner's habeas petition was clearly rendered moot. 203 F.3d at 474. The only real question that remained was whether any of the

There is one final point that warrants some brief discussion. While a habeas petitioner's custodian must be present in the forum district, the petitioner himself does not have to be within the district. Braden, 410 U.S. at 495 ("[s]o long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, even if the prisoner himself is confined outside the court's territorial jurisdiction"). Therefore, if a prisoner is confined in a particular district when he files his petition, and he is later transferred somewhere outside of that district, the transfer alone will not cause the petition to become moot, if the petitioner still has a custodian in the district in which the petition was filed. For example, in Weeks v. Wyrick, 638 F.2d 690, 692 (8th Cir. 1981), a prisoner of the State of Missouri filed a habeas petition in the Western District of Missouri challenging his state court criminal conviction. After his petition was filed, he was transferred to a prison in Iowa to serve his Missouri sentence. Because the prisoner was still subject to the custodial authority of Missouri state officials, (id. at 692, n. 5), the Court of Appeals concluded that his transfer to Iowa did not cause the Western District of Missouri to lose jurisdiction. The Court's ruling was consistent with the Braden principle, (i.e., that habeas jurisdiction is tied

---

federal authorities who allowed the extradition to occur should be sanctioned for violating the emergency stay order. No similar issue is presented here. There is nothing to indicate that Respondents in this case had any knowledge of this action when Petitioner's extradition was carried out, (aside from whatever Petitioner may have told them verbally), and – more importantly – no stay order or other order had been entered in this case before the extradition was effected. While habeas petitioners are not to be transferred while their federal court appeals are pending, (Fed. R. App. P. 23(a)), no comparable prohibition ensues from the filing of a habeas petition at the district court level. Thus, the Court can find no wrongdoing in the effectuation of Petitioner's extradition, even though it occurred four days after this action was filed. And again, even if Petitioner's post-filing extradition were improper, that would not alter the mootness of his petition.

to the location of the custodian, not the petitioner), because the prisoner was still subject to Missouri's custodial authority even after he was moved to Iowa.[6]

The instant case is readily distinguishable from Weeks, because Petitioner here is no longer subject to any custodial authority of any Minnesota individual or entity. Petitioner is not being held or detained by anyone in Minnesota; he apparently is not wanted for, or charged with, any crime by anyone in Minnesota; and he is not subject to any conditions of probation, parole or supervised release imposed by anyone in Minnesota. If the State of Washington were to dismiss its criminal charges against Petitioner and release him from custody, there is no reason to think that anyone in Minnesota would interfere with his freedom. In short, Petitioner is not presently subject to any custodial authority in this State.

Because Petitioner is no longer subject to any custodial claim by anyone located in Minnesota, his transfer, unlike the transfer in Weeks, has resulted in a loss of jurisdiction. Again, the case has been rendered moot, because Petitioner no longer has any custodian in Minnesota who can be compelled to act by writ of habeas corpus.

Although the Court concludes that the instant petition must be dismissed, it should be emphasized that the merits of Petitioner's claims have not been reached, and that the action should be dismissed without prejudice. The dismissal of this action should not, by

---

[6] Our Court of Appeals also applied the Braden principle in McCoy v. United States Board of Parole, 537 F.2d 962 (8th Cir. 1976). There, a federal prisoner confined in Nebraska filed a habeas petition in the federal district court for the Western District Court of Missouri, challenging actions taken by the United States Board of Parole. The Missouri Court transferred the case to Nebraska, because the petitioner was confined there when he filed his action. However, the Court of Appeals concluded that the petition had been properly filed in the Western District of Missouri, (even though the petitioner was confined in Nebraska), because the Board of Parole was "one of his custodians for purposes of habeas corpus jurisdiction," and the Board had a "sufficient 'presence'" in the Western District of Missouri to furnish habeas jurisdiction in that district. Id. at 965.

itself, affect any legal rights or remedies that may be available to Petitioner in Washington's state or federal courts. It should be specifically noted that, as far as this Court is concerned, the dismissal of this action should not cause any future federal habeas petition (filed in Washington) to be viewed as a second or successive petition for purposes of 28 U.S.C. §2244(b).

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's petition for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 11), be DENIED AS MOOT;

2. Petitioner's "Motion And Declaration Requesting Intervention By The Court," (Docket No. 11), be DENIED; and

3. This action be DISMISSED WITHOUT PREJUDICE.

Dated: August 9th, 2001

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District

Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500